IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LESHONDA RENA SOFTY ) | |
| ) | |
| v. ) | No. 3:19-0249 |
| ) | |
| ANDREW M. SAUL ) | |
|     Commissioner of ) | |
|     Social Security ) | |

**To:** The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

The *pro se* Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (*see* Docket Entry ("DE") 20), to which Defendant has filed a response. (*See* DE 21). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (*See* DE 8).

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 20) be **GRANTED,** the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this opinion.

# I. INTRODUCTION

Plaintiff initially filed an application for DIB on July 17, 2012, in which she asserted that, as of April 11, 2012, she was unable to work due to osteoarthrosis and allied disorders. *See* Transcript of the Administrative Record (DE 18) at 149.[1] This claim was denied on November 9, 2012. (AR 149).

On June 26, 2013, Plaintiff filed a separate application for DIB, in which she alleged that she was unable to work due to back disorders and substance abuse disorders. (AR 164). The application included an alleged onset date of disability of April 30, 2011. (AR 164). Plaintiff's application was denied initially and upon reconsideration. (AR 164, 179). Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared without counsel and testified at a hearing before ALJ Renee S. Andrews-Turner on October 23, 2015. (AR 36). On February 8, 2016, the ALJ issued a "partially favorable" decision, which concluded that Plaintiff became disabled on March 26, 2015. (AR 180, 196). However, Plaintiff requested that the Appeals Council review this decision, which prompted the Appeals Council to issue an order on June 22, 2017 vacating this partially favorable decision and remanding the case to the ALJ for further consideration of the effects of her substance abuse disorder. (AR 205-06).

Upon remand, Plaintiff appeared with counsel for an additional hearing before ALJ Andrews-Turner on February 12, 2018. (AR 84). On June 26, the ALJ entered a new "unfavorable" decision that denied Plaintiff's claim outright. (AR 12). On February 6, 2019, the Appeals Council denied Plaintiff's request for a review of the ALJ's second decision (AR 1-4), thereby making the

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and this Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.

2. The claimant engaged in substantial gainful during 2012. (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. The remaining findings address the period the claimant did not engage in substantial gainful activity.

4. Through the date last insured, the claimant had the following severe impairments: post-traumatic stress disorder ("PTSD"); depressive disorder; substance use disorders; degenerative disc disease; and bilateral ankle tendinopathy (20 CFR 404.1520(c)).

5. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), as follows: lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; frequently balance, stoop, kneel, crouch, crawl, and climb; avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; and can maintain concentration, pace, and persistence for simple and multi-level detailed instructions.

7. Through the date last insured, the claimant was able to perform past relevant work as a customer sales representative. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

8. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 30, 2011, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(f)).

(AR 18-28).

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 404.1520(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*.

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. § 404.1520(a)(4)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id*. § 404.1520(a)(v). In evaluating a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B).
5

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work, which resulted in a finding that Plaintiff was not disabled through the date last insured. (AR 18-28).

### C. Plaintiff's Assertion of Error

Plaintiff effectively asserts that the RFC in the second administrative opinion is based on an improper evaluation of records documenting alcohol and substance abuse and is therefore not supported by substantial evidence. (DE 20 at 1-3). Plaintiff therefore requests that the Commissioner's decision be reversed. (*Id.* at 3).

Sentence four of 42 U.S.C. § 405(g) states the following:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

6

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertion of error below.

**1. The ALJ's Evaluation of Plaintiff's Medical Records.**

Although the only question before the Court is whether the second administrative decision is supported by substantial evidence, a brief comparison of some of the salient findings contained in both decisions provides necessary context to the instant analysis. The ALJ determined in the first administrative decision that Plaintiff's PTSD symptoms "clearly worsened" after March 26, 2015, which led to the conclusion that Plaintiff was disabled as of this date. (AR 183-84, 193, 195-96). Notably, the ALJ found that "substance disorder" represented a severe impairment and provided the following discussion with respect to the impact of substance abuse on the ultimate finding of disability:

> [A]lthough the [claimant] has substance abuse, the claimant has reported that she drinks alcohol on a regular basis []. Although evidence notes claimant has used alcohol and drugs in the past, the record shows that despite the use of these substances, most of the claimant's GAF scores have ranged from 55 to 65, which demonstrates that these substances have not impacted her ability to mentally function or prevent her from caring for herself and her family []. The claimant has never been to a facility for substance abuse rehabilitation and has never received a DUI []."

(AR 186-87). The ALJ's discussion also includes the following quote from a VA treatment note: "Alcohol [is] not a problem for this veteran; drugs [are] not a problem for this veteran." (AR 187).

With respect to mental limitations, the ALJ determined in the first decision that Plaintiff had moderate difficulties with respect to concentration, pace, and persistence ("CPP"), as well as moderate difficulties in social functioning. (AR 187, 189). The ALJ ultimately concluded that Plaintiff could not maintain concentration, pace, and persistence ("CPP") for no more than one hour during an eight-hour workday, could not have any interaction with the public, coworkers, or supervisors, and could not adapt to changes in the workplace. (AR 193). Given these limitations, the ALJ concluded that there were not jobs existing in significant numbers in the national economy that Plaintiff could perform as of March 26, 2015. (AR 195).

The Appeals Council vacated this first administrative decision based on the ALJ's failure to adequately consider the impact of Plaintiff's non-compliance with recommended treatment and alcohol/substance use on the ultimate finding of partial disability. (AR 205). The Appeals Council's order directed the ALJ to "[o]btain additional evidence concerning the claimant's [PTSD]" and provide "[f]urther consideration of the effect of substance abuse on the claimant's ability to perform basic work activities[.]" (AR 205-06).

Following remand from the Appeals Council, the ALJ issued a medical expert interrogatory to Ann Monis, a non-examining clinical psychologist, who opined that there was insufficient evidence to determine the extent to which substance use would impact Plaintiff's activities of daily living. (AR 19). Specifically, Dr. Monis noted that although the record suggested the presence of alcohol dependence, it was "unclear whether this is recent and/or ongoing." (AR 2101). Dr. Monis made no reference to marijuana or any other substance. The ALJ then issued the second administrative decision, which included a discussion of Plaintiff's purported substance use that largely echoed her discussion in the first decision:

> [T]he record document[s] diagnoses of substance use disorders by medically acceptable sources. The claimant testified in February 2018[] that she continues to

> drink alcohol and smoke marijuana but stated that it had no bearing on her ability to work. The record shows that, despite the use of these substances, the claimant's GAF scores have ranged from 55 to 65, which demonstrates that these substances have not affected her ability to mentally function or prevent her from caring for herself and her family []. The claimant has never been to a facility for substance abuse rehabilitation and has never received a DUI [].″

(AR 19). The ALJ thus concluded that the absence of definitive proof regarding the effects of Plaintiff's substance use precluded a finding that substance use impacted Plaintiff's mental impairments. (AR 19).

Despite again concluding that substance use was not material to a determination of disability, as well as again finding that Plaintiff had "moderate" difficulties with respect to CPP and (AR 20), the ALJ formulated a different RFC that significantly reduced the mental restrictions included in the original RFC. Namely, the ALJ found that instead of an inability to maintain CPP for more than one hour, interact with the public, coworkers, or supervisors, or adapt to changes in the workplace (AR 193), Plaintiff could now maintain CPP "for simple and multi-level detailed instructions." (AR 20). The ALJ also removed any restrictions involving social interaction and adaptation after determining that Plaintiff now experienced "no limitation" in these areas. (AR 20).

Upon review of the record, the Court concludes that the ALJ's revised RFC formulation is not supported by substantial evidence. The Court specifically finds that the ALJ's decision violates the "treating physician rule," which requires the ALJ to give controlling weight to the opinion of a treating physician if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[2] If the opinion is not given controlling weight, the ALJ

---

[2] The treating physician rule applies to all social security claims filed before March 27, 2017 (*see* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017), such as the instant one. (AR 183).

9

must determine the amount of weight to accord it based on a variety of factors that include the extent of the treatment relationship, whether the physician is a specialist, and the degree to which the opinion is consistent with the record as a whole. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013). The ALJ must provide "good reasons" for the weight allocations that are "sufficiently specific to make clear to any subsequent reviewers." *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) (quoting *Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 (6th Cir. 2011)).

The ALJ in the instant matter initially gave controlling weight to the opinion of Dr. Anjani Dhamodharan, a psychiatrist who treated Plaintiff between September 2010 and October 2014 for multiple mental conditions, including major depressive disorder, PTSD, and substance abuse disorder. (AR 1261). Dr. Dhamodharan's medical source statement, which was completed on September 30, 2013 ("first MSS"), concludes that Plaintiff has "moderate" difficulties with her ability to understand and remember detailed instructions, carry out detailed instructions, maintain concentration and attention for extended periods, and respond appropriately to changes in the work setting. (AR 2092-94). The first MSS also finds that Plaintiff suffers from "marked" restrictions with respect to her ability to perform activities within a schedule, sustain an ordinary routine without special supervision, interact appropriately with the public, accept instructions and respond appropriately to criticism from a supervisor, get along with coworkers, and maintain socially appropriate behavior. (AR 2092-93). In according controlling weight to this first MSS, the ALJ noted that the opinion was "well-supported by objective medical findings" and "supported by the weight of the evidence (other opinions, treatment history, etc.)." (AR 193).

Following remand, then-counsel for Plaintiff asked Dr. Dhamodharan to provide an additional medical source statement, which was completed on February 7, 2018 ("second MSS").

10

(AR 2099). The second MSS contains a detailed explanation that the mental limitations contained therein pertain only to the time period during which Dr. Dhamodharan treated Plaintiff, i.e. September 2010 through October 2014. (AR 2098-99). Dr. Dhamodharan opined that, during this time period, Plaintiff suffered from "moderate" limitations in her ability to interact appropriately with coworkers and the public, as well as "marked" limitations in her ability to maintain concentration and attention, maintain regular attendance, sustain a routine without special supervision, demonstrate reliability, accept instruction and respond appropriately to criticism, and respond appropriately to work changes and stresses. (AR 2098).

In the second administrative opinion, the ALJ appears to accord "little weight" to both the first and second MSS opinions based on the following reasoning:

> [T]hey are inconsistent with the record as a whole, which includes significant noncompliance with treatment, including refusal to maintain abstinence from alcohol and marijuana. In addition, GAF scores noted throughout the period are more consistent with mild and moderate limitations. It is noted that the nurse reported a current (2018) GAF score of 50 [], but the record documents no mental health treatment after November 2017, when the score was 55. The undersigned of assessing [sic] little weight to the treating psychiatric providers is supported by the medical expert's examination of the evidence. Dr. Monis pointed out that there was no evidence in the record to support the marked limitations noted by the treating psychiatric provider as there was no evidence that any formal testing had been performed in order to support such limitations [].

(AR 25-26). This discussion falls short of offering the requisite "good reasons" for rejecting Dr. Dhamodharan's opinion. First, the ALJ fails to distinguish between the first MSS and the second MSS, which contain differences relating to the specific mental limitations at issue. It is possible that such distinctions are simply the result of the different language employed in each of the forms completed by Dr. Dhamodharan. An alternative explanation is that there are significant inconsistencies in the opinions that cannot be reconciled. Because the ALJ does not distinguish the opinions, however, her discussion fails to "make clear to any subsequent reviewers the weight

11

the adjudicator gave to the treating source's medical opinion." *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012).

The Court also notes that the ALJ's "good reasons" discussion references the opinion of James Poindexter, a psychiatric nurse practitioner who provided an MSS on January 24, 2018. (AR 25, 2095-96). Yet the ALJ provides no discussion of the specific functional limitations proffered in Mr. Poindexter's assessment, which are different from those set forth in Dr. Dhamodharan's opinions. (AR 2092-96, 2098-99). The ALJ instead improperly groups all three of the opinions together as a single, monolithic treating source opinion, which fails to accomplish the treating physician's rule primary objective of providing clarity to the claimant whose application has been rejected. *See Peacock v. Astrue*, No. 2:05-cv-0076, 2009 WL 3615011, at *14 (M.D. Tenn. Nov. 2, 2009) ("The reason giving requirement also exists so plaintiffs understand the disposition of their cases and to ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (citing *Wilson*, 378 F.3d at 544-45) (internal quotations omitted).

Additionally, while noncompliance with treatment may be relevant in evaluating the credibility of a claimant's allegations of disabling pain, *Ranellucci v. Astrue*, No. 3:11-cv-0640, 2012 WL 4484922, at *11 (M.D. Tenn. Sept. 27, 2012), it is unclear how Plaintiff's use of substances detracts from either of the MSS findings given that Dr. Dhamodharan was not only aware of Plaintiff's alcohol and marijuana use, but identified "alcohol dependence" and "cannabis use disorder" as diagnoses and bases for her suggested mental restrictions. (AR 743, 1261, 2098).[3]

---

[3] The Court also sees no reference to the operative substance abuse regulation, 20 C.F.R. § 404.1535, anywhere in the second administrative opinion. At least one court in this circuit has found that such an omission constitutes reversible error. *See Lynch v. Comm'r of Soc. Sec.*, No. 1:12-cv-075, 2013 WL 264670, at *8 (S.D. Ohio Jan. 23, 2013), *report and recommendation adopted*, 2013 WL 588888 (S.D. Ohio Feb. 14, 2013) (ALJ's failure to cite 20 C.F.R. § 404.1535

12

The ALJ herself determined that "substance use disorders" represents a severe impairment (AR 18), but offers no discussion of how Dr. Dhamodharan's findings are inconsistent with Plaintiff's ongoing alcohol and marijuana use.[4]

Furthermore, GAF scores "are not raw medical data and do not necessarily indicate improved symptoms or mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007). The ALJ is certainly free to evaluate GAF scores as part of her review of the record, but she must meaningfully explain how such scores undermine the opinion of a treating physician. *See Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion gets the short end of the stick."). Notably, Dr. Dhamodharan found that Plaintiff suffers from "moderate" limitations with respect to her ability to interact appropriately with the public and coworkers and respond to changes in a work setting in both MSS opinions. (AR 2093, 2098). This appears to be consistent with a GAF score of 55, which indicates "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (quoting *DSM–IV–TR* at 34).

---

"was not a mere drafting oversight, but accurately reflected his failure to follow the procedures prescribed there. The Commissioner has duly promulgated regulations in this area, which the ALJ may not silently disregard.").

[4] Even when evaluating the credibility of a claimant's allegations, it is perhaps a suspect practice to acknowledge the existence of an addictive condition while simultaneously chastising the individual for engaging in the addictive behavior. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) ("[A] mentally ill person's noncompliance with treatment can be ... the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse.") (internal citation and quotations omitted).

Finally, the ALJ's reliance on Dr. Monis' medical records review as a basis for discounting Dr. Dhamodharan's opinion is questionable at best. The Court first notes that the ALJ gave only "partial weight" to Dr. Monis' finding that Plaintiff suffered from "no more than mild mental limitations," concluding that the evidence instead "supports a moderate limitation in [CPP]." (AR 25). However, Dr. Dhamodharan's first MSS similarly concludes that Plaintiff experienced "moderate" difficulties in her ability to maintain concentration and attention for extended periods. (AR 2092).

The ALJ also cites Dr. Monis' statement that the absence of "formal testing" with respect to "concentration, memory, [and] pace" weighed against the "marked" findings in Dr. Dhamodharan's MSS opinions (AR 25-26, 2107), yet Dr. Dhamodharan actually found no such marked limitations with respect to memory in either of her opinions. (AR 2092, 2098). Again, the ALJ's failure to parse the limitations contained in each opinion prevents the Court from meaningful review. *See Peacock*, 2009 WL 3615011, at *15 ("The ALJ's lack of specificity gives rise to a level of confusion that is avoidable when [the treating physician rule is] properly applied."). Even if Dr. Dhamodharan had made such "marked" memory findings, the cited portion of Dr. Monis' opinion on which the ALJ relies would not be sufficient to reject a treating physician's opinion. *See Gayheart*, 710 F.3d at 377 ("Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion."). The Court therefore concludes that the ALJ's allocation of weight to the opinions provided by Dr. Dhamodharan is not supported by substantial evidence and warrants remand for further consideration.

14

There are other errors in the second administrative opinion that, although not articulated by Plaintiff, should be addressed. During the second administrative hearing, the ALJ attempted to accommodate Plaintiff's "moderate" limitations in CPP by posing two hypotheticals to the vocational expert to determine whether an individual who was limited to "simple" and "low level detailed instructions" could perform Plaintiff's past work as a customer sales representative. (AR 128-29). Despite the vocational expert's testimony that such mental restrictions would preclude the performance of Plaintiff's past relevant work (AR 128-29), the ALJ concluded at step four that Plaintiff *could* perform past relevant work as customer service representative. (AR 26). The ALJ erred in this regard because work as a customer service representative is skilled in nature (AR 26), which is not available to an individual experiencing moderate difficulties with CPP. *See Myers v. Comm'r of Soc. Sec.*, No. CV 15-12873, 2016 WL 7888017, at *7 (E.D. Mich. Sept. 27, 2016), *report and recommendation adopted*, 2017 WL 227956 (E.D. Mich. Jan. 19, 2017) ("The Court is unaware of any instance where moderate concentrational deficiencies allowed for the performance of skilled work."). *Cf. Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (holding that moderate concentration limitations in carrying out detailed instructions and maintaining attention and concentration for extended periods was adequately addressed by restricting the claimant to unskilled work). Therefore, notwithstanding the ALJ's alternative step five findings, which generally renders any error at step four harmless, the ALJ's step four finding is not supported by substantial evidence.

Furthermore, it is not evident to the Court that the ALJ's RFC finding that Plaintiff can maintain CPP "for simple and multi-level detailed instructions" (AR 20) was necessarily captured in the hypotheticals posed to the vocational expert. The ALJ's alternative step five finding was based on the vocational expert's testimony that an individual who could follow "low level detailed

15

instructions, but not [] executive level instructions" could perform multiple jobs in the national economy. (AR 129). Because there is no generic language used for a claimant found to suffer from "moderate" CPP limitations, ALJs have employed various combinations of similar words to describe the individual's mental functioning. *See, e.g., Burns v. Berryhill*, No. 3:17-cv-1445, 2018 WL 7291622, at *3 (M.D. Tenn. Dec. 10, 2018), *report and recommendation adopted sub nom. Burns v. Soc. Sec. Admin.*, 2019 WL 587592 (M.D. Tenn. Feb. 12, 2019) (affirming ALJ's finding that claimant "could maintain [CPP] to perform simple and low-level detailed tasks but not higher-level, multi-step detailed tasks"); *Green v. Berryhill*, No. 4:16-cv-108, 2018 WL 3557361, at *2 (E.D. Tenn. July 24, 2018) (affirming ALJ's finding that claimant limited to carrying out "simple and low-level detailed work instructions (non-executive level, non-multi-step detailed instructions)"); *Gomez v. Colvin*, No. 3:15-cv-1056, 2017 WL 468412, at *2 (M.D. Tenn. Feb. 3, 2017), *report and recommendation adopted sub nom. Gomez v. Soc. Sec. Admin.*, 2017 WL 5885375 (M.D. Tenn. Mar. 2, 2017) (affirming ALJ's finding that claimant able to maintain CPP "for simple tasks, along with low-level detailed tasks (but not higher level multi-step detailed)"). Some amount of pedantry is therefore required of the ALJ, and a more precise description of Plaintiff's functional limitations on remand would likely obviate any future confusion.

Finally, the Court notes the absence of any meaningful discussion of PTSD in the ALJ's second administrative opinion. Despite asserting that the formulated RFC "does not contain any unaddressed contrary findings" (AR 26), the ALJ completely disregarded the findings of treating psychiatrist Dr. Harvey Asher, who determined from a March 26, 2015 appointment that Plaintiff suffered from extremely restrictive functional limitations due to her "worsening" PTSD symptoms. (AR 1273). Dr. Asher's notes were discussed in detail in the first administrative opinion, with such evidence forming the basis for the ALJ's initial determination that Plaintiff was disabled as of

16

March 26, 2015. (AR 193). Dr. Asher emphasized Plaintiff's "poor concentration" and hallucinations (AR 1273), yet the ALJ omitted this evidence on remand even after again finding that PTSD represented a severe impairment (AR 18), and noting that the VA had already assigned a "70% disability rating" to Plaintiff due in part to PTSD. (AR 324, 326). While the ALJ is not required to discuss every piece of evidence in the record, it seems particularly egregious that Dr. Asher's assessment played no role in the ALJ's second opinion. *See Morris v. Sec'y of Health & Human Servs.*, 845 F.2d 326 (table), 1988 WL 34109, at * 2 (6th Cir. 1988) ("[W]hen the ALJ fails to mention rejected evidence, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.") (internal citation omitted).

For all these reasons, the Court finds that the ALJ's second administrative decision is not supported by substantial evidence. Because proof of disability is not "overwhelming," however, the Court has no basis on which to award benefits. *Lohr v. Comm'r of Soc. Sec*., 559 F. Supp. 2d 784, 794 (E.D. Mich. 2008) (quoting *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir.1994). The Court therefore recommends remand for further consideration consistent with this Report and Recommendation.

## V. RECOMMENDATION

Based on the foregoing analysis, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (DE 20) be GRANTED and the Commissioner's decision be REVERSED and REMANDED for further consideration.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the

specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

        Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge